THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PATRICK
LANZILLO, Appellant.

Third Department, March 4, 1942.

*Daniel H. Prior*, for the appellant.

*John F. Doyle, District Attorney* [*Carleton J. King, Assistant
District Attorney*, of counsel], for the respondent.

HILL, P. J.  Defendant has been convicted in the Saratoga
County Court of the crime of manslaughter in the second degree.
He was indicted for having caused the death of George Stevens,
the indictment stating that on January 8, 1941, defendant " without
a design to effect death, in the heat of passion struck and by means
of his fists inflicted divers wounds upon " Stevens, who was a
policeman in the employ of the city of Saratoga Springs.

The case presents sharp issues of fact, particularly as to whether
the injuries which decedent received in the fight with defendant
contributed to his death from coronary thrombosis.

Defendant and a male companion went from their home in Troy
to Saratoga Springs, where defendant drank rather heavily and

became more or less intoxicated. Around eight-thirty o'clock in the evening they left the saloon where they had been drinking and walked along Broadway. Stevens, who was in civilian clothing, observed that the defendant made a remark to a young woman and admonished him. From the testimony of the young lady, decedent's conduct was at least zealous, for she says, " I just heard one of the fellows say ' where can we get something to eat? ' * * * They asked where they could have a bite to eat. * * * What tone of voice did they speak in? A. A normal conversational tone." After the decedent had accosted the defendant, the witnesses for the People who heard the transaction say that defendant used violent and profane language and invited a fight; that Stevens was knocked down three times by defendant and then drew a blackjack and struck the defendant with such force that he was taken to the police station in a semi-conscious condition caused either by alcohol or the blow. The witnesses for defendant tell a different story. They say that decedent struck the defendant with a blackjack when the latter remonstrated and struggled against being arrested and taken to the station house. There is testimony on behalf of the People that on one occasion while Stevens was lying upon the ground defendant kicked him in the side. That Stevens would permit himself to be knocked to the ground three times before using his blackjack taxes one's credulity somewhat.

On the same evening decedent went to a hospital. A physician described his condition. " He was nervous and perspiring and I had the nurse place him on the table and remove his clothing so I could examine him. I didn't strip him, I just removed his outer clothing, overcoat, sweater. The outstanding findings were a black and blue area around the left eye, cut over the bridge of the nose. On the base of his nose there was a laceration half an inch in length, sprain of the left hand, puffiness to palpation. On the right hand I noticed a definite fracture of the fifth metacarpal bone of that hand. I noticed the bones grated against each other. Multiple bruises, and the patient was in a condition of shock with rapid pulse." In explanation of the statement " multiple bruises " the doctor said, " I didn't make a detailed note of where they all were, some about the head and neck, around the shoulders and some on the upper abdomen and chest. I didn't make notes of where they all were. I marked it multiple body bruises." The following day he did not work. Beginning on the tenth of January and continuing for eight nights he did not work. Thereafter he went to the hospital and died on February seventeenth. Two attending physicians testified that he suffered from peritonitis and mesenteric embolism or mesenteric thrombosis

which was attributed to trauma upon his side and abdomen. The evidence of one of these is weakened somewhat because of his failure to mention in the death certificate a disease other than coronary thrombosis. A physician called by the defendant testified that he examined decedent and found no evidence of peritonitis or of the mesenteric thrombosis.

It is not questioned that in March, 1940, decedent was ill from coronary thrombosis. The two experts sworn by the defendant testified in substance that it was their opinion that the second coronary thrombosis which caused death was the natural sequence of the first and could have occurred without any additional cause. Upon the trial decedent's fellow officers were permitted to testify concerning complaints which decedent made after his injury during the time that he was on duty. One officer said, " Several times he put his hand on his stomach and said, ' I must have got an awful wallop in here, my side is sore.' I am sure that is the substance of what he said." Evidence similar to this was given by the wife of the decedent. These statements were hearsay, inadmissible and prejudicial for they tended to connect the pain with the claimed blows or kicks in the side or stomach. The charge was at fault in stating the rights of a person attacked to repel an assault. (*People* v. *Ligouri*, 284 N. Y. 309.)

The errors recited might be overlooked if the evidence of defendant's guilt was overwhelming, but it is not. Upon a new trial the court should charge as to the burden of proof and the measure thereof with greater definiteness.

The judgment of conviction should be reversed on the law and facts and a new trial granted.

CRAPSER, BLISS and FOSTER, JJ., concur; HEFFERNAN, J. I concur in the opinion of Presiding Justice HILL only in so far as it recommends a reversal of the judgment. I dissent as to the granting of a new trial. That the trial judge seriously erred in the reception of evidence is not even debatable; that his charge was not only highly prejudicial but wholly inadequate regarding the rules of law to be applied is likewise beyond dispute. If there could be the slightest doubt about the fact that the trial judge was animated by prejudice against the defendant that doubt entirely disappears when his statement imposing sentence is read. The proof in this case is wholly insufficient to establish defendant's guilt beyond a reasonable doubt. In my opinion the indictment should be dismissed and the people of Saratoga county should be spared the unnecessary expense of a second trial.

Judgment of conviction reversed on the law and facts and a new trial granted.